The **NEW YORK TIMES COMPANY,**
**Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF DEFENSE and United States Department of Justice, Defendants.**

**No. 06 Civ. 1553(RMB).**

United States District Court,
S.D. New York.

June 28, 2007.

---

David Edward McCraw, The New York Times Company, New York City, for Plaintiff.

Rupa Bhattacharyya, U.S. Department of Justice, Civil Division, Washington, DC, for Defendants.

## DECISION AND ORDER

BERMAN, District Judge.

### I. Background

On or about April 26, 2006, the New York Times Company ("Plaintiff" or "New York Times") filed an amended complaint ("Amended Complaint") challenging the denial by the United States Department of Defense ("DOD") and the United States Department of Justice ("DOJ" and, collectively, "Defendants") of Plaintiff's request for the release of certain documents pursuant to the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* ("FOIA"). (*See* Amended Complaint ("Am.Compl.").) Plaintiff argues that Defendants have "asserted no lawful basis under FOIA" for withholding the requested documents and asks the Court to direct the DOD and DOJ to provide the requested materials. (Am. Compl.¶¶ 28, 36, 46.)

Plaintiff initially made its FOIA request, on or about December 16, 2005, seeking "nine enumerated categories of records" related to "a domestic intelligence and wiretap program run by the National Security Agency under the authorization of President Bush," known as the Terrorist Surveillance Program ("TSP"). (Defendants' Statement of Material Facts as to Which There is No Genuine Issue ("Def. 56.1 Stmt."), ¶ 12.) Pursuant to FOIA, Defendants were required to "determine within 20 days ... after the receipt of any such request whether to comply with such request" and "immediately notify the person making such request of such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i). Defendants "failed to provide the response required by FOIA within the time allowed by the statute." (Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue ("Pl. 56.1 Stmt."), ¶¶ 7, 12.) As a result, Plaintiff was "deemed to have exhausted [its] administrative remedies," 5 U.S.C. § 552(a)(6)(C)(i), and Plaintiff filed its (original) complaint with this Court on or about February 27, 2006.[1]

By letter dated May 11, 2006, DOD informed Plaintiff that it had "located two documents responsive to your request" and had referred one of the documents to the National Security Agency ("NSA") and the second document to DOJ "for processing." (Def. 56.1 Stmt. ¶ 17.)

By letter dated July 21, 2006, the DOJ Office of Information and Privacy ("OIP") informed Plaintiff that it was releasing 174 pages of documents, plus two pages with personnel information redacted which "would constitute a clearly unwarranted invasion of personal privacy" pursuant to 5

U.S.C. § 552(b)(6) ("Exemption 6").[2] (Def. 56.1 Stmt. ¶ 20.) OIP also reported that it was withholding 91 pages plus five "records or categories of records" pursuant to one or more FOIA exemptions, and referring additional documents to other agencies or other DOJ divisions "for processing." (Def. 56.1 Stmt. ¶¶ 22–24.) On July 26, 2006, the Criminal Division of DOJ released to Plaintiff one three-page document with redactions referred to it by OIP. (Def. 56.1 Stmt. ¶ 33.) All other documents were withheld pursuant to one or more FOIA exemptions by the DOJ Civil Division, DOJ Office of the Legal Counsel ("OLC"), DOJ Office of Intelligence Policy and Review ("OIPR"), the Federal Bureau of Investigation ("FBI"), or the National Security Agency ("NSA"). (Def. 56.1 Stmt. ¶¶ 26–34.)

On or about November 17, 2006, Defendants moved for summary judgment against Plaintiff, arguing that "[D]efendants have met their burden of demonstrating that the withheld records fall within [one or more] FOIA exemptions." (Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Def.Mem."), at 1, 8.) Specifically, Defendants argue that: (1) a number of the documents have been classified as "TOP SECRET" by the Director of National Intelligence pursuant to Executive Order 12958, as amended on March 25, 2003 ("Classified Documents"), and are exempt pursuant to 5 U.S.C. § 552(b)(1) ("Exemption 1"), as "specifically authorized under criteria established by Executive Order to be kept secret in the interest of national defense or foreign policy" (Def. Mem. at 8, 11); (2) each of the

---

**1.** The original complaint raised claims identical to those in the Amended Complaint but named only DOD as a Defendant.

**2.** FOIA contains nine categories of documents to which the statute's disclosure requirements do not apply, commonly referred to as FOIA "exemptions." *See* 5 U.S.C. § 552(b).

Classified Documents is also exempt pursuant to 5 U.S.C. § 552(b)(3) ("Exemption 3"), as "specifically exempted from disclosure by [a federal] statute" which "establishes particular criteria for withholding or refers to particular types of matters to be withheld" from the public (Def. Mem. at 14); and (3) all of the withheld documents which have not been classified ("Unclassified Documents"), as well as most of the Classified Documents, are exempt pursuant to 5 U.S.C. § 552(b)(5) ("Exemption 5") as inter-agency or intra-agency memorand[a] or letters which would not be available by law under "the deliberative process privilege, ... the attorney-work product doctrine, and the presidential communications privilege." (Def. Mem. at 19.) Defendants also argue that DOD "can show that its search for the requested records was 'adequate'," as defined under FOIA. (Def. Mem. at 5 n. 4.)

In support of their summary judgment motion, Defendants submitted nine declarations which, among other things, provide descriptions of Defendants' document search(es) in response to Plaintiff's FOIA request and which explain Defendants' determinations to withhold documents under one or more FOIA exemptions.[3] The Bradbury, Negroponte, Baker, and Hardy Declarations were filed (publicly) with redactions (and were also made available to the Court in unredacted form "for the Court's *in camera, ex parte* review" on May 24, 2007). (Notice of Lodging of Classified Exhibits in Support of Defendants' Motion for Summary Judgment, dated November 15, 2006, at 1.) Defendants also submitted two so-called *Vaughn* indexes as exhibits to the Bradbury Declaration ("Bradbury *Vaughn* Index") and Pustay Declaration ("Pustay *Vaughn* Index"), which provide the date, number of pages, and a description of the Unclassified Documents withheld. *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973).

On or about December 6, 2006, Plaintiff opposed Defendants' motion and cross-moved for partial summary judgment and certain other relief, arguing that (1) as to

---

**3.** The declarations were made by Steven G. Bradbury, Acting Assistant Attorney General, Office of the Legal Council, DOJ, dated November 15, 2006 ("Bradbury Declaration"); John D. Negroponte, Director of National Intelligence of the United States, dated September 7, 2006 ("Negroponte Declaration"); William T. Kammer, Chief, Office of Freedom of Information ("OFOI"), Executive Services Directorate, Washington Headquarters Services, DOD, dated November 15, 2006 ("Kammer Declaration"); Melanie Ann Pustay, Deputy Director, Office of Information and Privacy, DOJ, dated November 15, 2006 ("Pustay Declaration"); James A. Baker, Counsel for Intelligence Policy, Office of Intelligence Policy and Review, National Security Division, DOJ, dated November 15, 2006 ("Baker Declaration"); David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, FBI, dated November 14, 2006 ("Hardy Declaration"); James M. Kovakas, Attorney–in–Charge, Freedom of Information and Privacy Acts Office, Civil Division, DOJ, dated October 31, 2006 ("Kovakas Declaration"); Louis F. Giles, Director of Policy, NSA, dated November 14, 2006 ("Giles Declaration"); and Lynne R., Deputy Chief of Staff for Operations and Support, Signals Intelligence Directorate, NSA, dated November 15, 2006 ("Lynne R. Declaration").

On June 8, 2007, the *New York Times* reported that Congress may "issue subpoenas to obtain secret legal opinions and other documents from the Justice Department related to the National Security Agency's domestic wiretapping program," citing, among others, Steven G. Bradbury who testified as to the documents before a House judiciary subcommittee on June 7, 2007. James Risen, *Democrats May Subpoena Eavesdropping Documents,* N.Y. Times, June 8, 2007, at A1. On June 28, 2007, the *New York Times* also reported that the Senate Judiciary Committee has issued subpoenas "to the White House, Vice President Dick Cheney's office and the Justice Department." James Risen, *Subpoenas Sent to White House on Wiretapping,* N.Y. Times, June 28, 2007, at A1.

the Classified Documents withheld pursuant to Exemption 1, Defendants do not satisfy "their obligation ... to provide a relatively detailed analysis of the withheld material"; (2) as to the Classified Documents withheld pursuant to Exemption 3, Defendants provide insufficient "murky and conclusory declarations"; and (3) none of the documents (Classified or Unclassified) withheld pursuant to Exemption 5 "involves a policy decision or litigation or legal transaction" and disclosure of the documents is not "likely to inhibit internal agency decision-making processes." (Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment and Certain Other Relief and in Opposition to Defendants' Motion for Summary Judgment ("Pl.Mem."), at 14, 15, 24.) Plaintiff also contends that DOD does not "provid[e] the 'reasonable detail' required by law" in describing its document search (Pl. Mem. at 11), and asks the Court to "direct Defendants to ... submit legally sufficient declarations" for the Classified Documents withheld pursuant to Exemptions 1 and 3, to order the release of the Unclassified Documents withheld under Exemption 5, and to "direct the Defendants to conduct an adequate search of the DOD records and provide further proof of such a search." (Pl. Mem. at 27.)

On or about January 19, 2007, Defendants filed an opposition to Plaintiff's motion for partial summary judgment and reply in further support of their motion for summary judgment. (*See* Defendants' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment and Certain Other Relief and Reply in Support of Defendants' Pending Motion for Summary Judgment.) On or about February 2, 2007, Plaintiff filed a reply. (*See* Plaintiff's Reply Memorandum of Law in Support of Motion for Partial Summary Judgment and Certain Other Relief.)

The parties waived oral argument.

## II. *In Camera* Reviews by the Court

The Court has conducted two *in camera* reviews in this matter, *see ACLU v. Dep't of Defense,* 389 F.Supp.2d 547, 567 (S.D.N.Y.2005), as follows:

First, after reviewing the parties' submissions, including the declarations submitted by Defendants with redactions, the Court requested that Defendants produce *ex parte* to the Court all declarations in unredacted form. On May 24, 2007, the Court conducted an *in camera* review of the unredacted Bradbury, Negroponte, Baker, and Hardy Declarations.

Second, by Order dated May 29, 2007 ("May 29 Order"), the Court requested from Defendants "a *Vaughn* Index covering the documents identified by Defendants as [DOJ Office of the Deputy Attorney General ("ODAG")] 3, 8, 21, 22, 31, 34, 40, 41, 43, 44, 45, 49, 50, 51, 53, and 54," (which are Classified Documents withheld pursuant to Exemptions 1, 3, and/or 5). (May 29 Order at 1–2.) In response, on June 5, 2007, Defendants filed the Second Redacted Declaration of Steven G. Bradbury ("Second Bradbury Declaration"), which provides descriptions of the documents identified in the May 29 Order and "a [redacted] classified index of these documents." (Second Bradbury Declaration ¶ 2.) And, on June 6, 2007, the Court conducted an *in camera* review of the Second Bradbury Declaration and accompanying *Vaughn* Index in unredacted form.

For the reasons stated below, Defendants' Motion for Summary Judgment is granted in part and Plaintiff's Motion for Partial Summary Judgment and Certain Other Relief is denied in part as set forth below.

## III. Legal Standard

"Summary judgment is the procedural vehicle by which most FOIA actions are resolved." *Jones–Edwards v. Appeal Bd. of NSA*, 352 F.Supp.2d 420, 423 (S.D.N.Y. 2005). "Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999). Where, as here, the parties have filed cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

 For an agency to prevail on a summary judgment motion in a FOIA case, it "must demonstrate that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995). "[T]he defending agency [also] has the burden of showing that its search was adequate." *Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.1994). "[S]ummary judgment in favor of the FOIA plaintiff" is appropriate "[w]hen an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption," but should be denied if the agency satisfies its burden "to show that requested material falls within a FOIA exemption." *Petroleum Info. Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1433 (D.C.Cir. 1992).

 "FOIA specifies that a district court must conduct *de novo* review of an agency's claims to exemptions," *Lee v. FDIC*, 923 F.Supp. 451, 453 (S.D.N.Y. 1996), which "are to be narrowly construed with all doubts resolved in favor of disclosure." *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir.1999).

 Agency affidavits or declarations "may justify summary judgment" if they are "sufficient to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 31 (D.C.Cir.1998); *see Halpern*, 181 F.3d at 293 ("blind deference is precisely what Congress rejected when it amended FOIA in 1974"). "Affidavits submitted by an agency are accorded a presumption of good faith," *Carney*, 19 F.3d at 812, and "[i]n the context of national security exemptions, such declarations merit substantial weight." *Campbell*, 164 F.3d at 30.

## IV. Analysis[4]

### (1) Classified Documents Withheld Under Exemption 1

Defendants argue that these documents "have been currently and properly classified" and "if disclosed, when coupled with other available or unconfirmed information could provide insight into U.S. intelligence strategies." (Def. Mem. at 14.) Plaintiff counters that "the Defendants are still required in the first instance to establish for the Court that they have a proper basis under the law to withhold the items they are shielding from disclosure." (Pl. Mem. at 15.)

---

4. A chart summarizing the Court's analysis of the withheld documents is attached hereto as "Exhibit A."

FOIA Exemption 1 shields from disclosure documents that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 12958, as amended by the President on March 25, 2003, allows certain members of the executive branch to classify documents which "reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism." Exec. Order No. 12958, 60 Fed.Reg. 15315 (Mar. 25, 2003), § 1.1(a)(4). This includes documents concerning, among other things, "intelligence activities (including special activities), intelligence sources or methods, or cryptology," "scientific, technological, or economic matters relating to the national security," and "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." Exec. Order No. 12958, 60 Fed.Reg. 15315 (Mar. 25, 2003), §§ 1.4(c), (e), (g).

■ "[A]n agency affidavit invoking Exemption 1 must provide detailed and specific information demonstrating both why the material has been kept secret and why such secrecy is allowed by the terms of an existing executive order." *ACLU v. United States Dep't of Justice*, 265 F.Supp.2d 20, 27 (D.D.C.2003).

(a) *Negroponte Declaration*

The Negroponte Declaration describes the decision of John D. Negroponte, for-mer Director of National Intelligence, to classify "information relating to the TSP" as "TOP SECRET under the standards set forth in Executive Order 12958." [5] (Negroponte Declaration ¶ 20.) The Negroponte Declaration sets forth seven categories of "TSP-related information" which fall within the authority of the Director of National Intelligence "to protect intelligence sources and methods," including "any operational details concerning the technical methods by which the NSA intercepts communications under the TSP," and "any information that would reveal or tend to reveal whether someone is a target of surveillance under the TSP." [6] (Negroponte Declaration ¶ 22.) According to the Negroponte Declaration, "any determination made to withhold" information in any of the seven categories is proper to protect "the continued successful operation of U.S. intelligence-gathering methods." (Negroponte Declaration ¶ 25.)

(b) *Bradbury, Baker, Hardy, Giles, and Lynne R. Declarations*

The Bradbury Declaration describes 33 Classified Documents, including "classified information regarding the terms of the President's authorization of the TSP," "[r]ecords or categories of records relating to the criteria used [in] determining whether certain groups are affiliated with al Qaeda," and "reporting with respect to the intelligence successes achieved through the TSP." (Bradbury Declaration ¶¶ 41, 56, 57.) The Second Bradbury Declaration describes 16 of those documents in greater detail. (*See* Second Bradbury Declaration ¶ 2.) [7]

---

**5.** Mr. Negroponte was Director of National Intelligence as of the date of his declaration, but stepped down on January 5, 2007. The current Director of National Intelligence is John Michael McConnell.

**6.** Four of the seven categories have been redacted and were reviewed by the Court *in camera* on May 24, 2007 (*see* II, above).

**7.** The Second Bradbury Declaration also describes a document identified as ODAG 50

The Baker Declaration describes five Classified Documents which concern "dealings with the Foreign Intelligence Surveillance Court" ("FISC"), and states that "proceedings before the FISC [a]re to be conducted in the strictest secrecy if the confidentiality of United States intelligence sources and methods [i]s to be maintained." (Baker Declaration ¶¶ 15, 17.)

The Hardy Declaration describes two "records or categories of records" which "originated with—and/or contain equities of—the FBI," specifically "finals and drafts of an FBI policy memorandum which are appropriately withheld in full." (Hardy Declaration ¶¶ 6, 11.)

The Giles and Lynne R. Declarations describe an unspecified number of documents that "originated at NSA and/or had NSA equities." (Lynne R. Declaration ¶ 8.) The Giles Declaration states that the withheld documents are properly classified under Executive Order 12958 because they pertain to "intelligence activities (including special activities)," "intelligence sources and methods or cryptology," "foreign relations or foreign activities of the United States," and/or "vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security." (Giles Declaration ¶ 11.) The Lynne R. Declaration describes generally "why information responsive to each of the Plaintiff's [FOIA requests] is exempt from disclosure" as part of the "signals intelligence operations of NSA." (Lynne R. Declaration ¶¶ 1, 18.)

 Having reviewed the Bradbury and Second Bradbury Declarations, including, on May 24, 2007 and June 6, 2007, the redacted portions of both declarations (respectively), the Baker and Negroponte Declarations (see Negroponte Declaration ¶¶ 22–35), and the Giles and Lynne R. Declarations, the Court concludes that the declarations adequately describe the Classified Documents identified by Defendants as ODAG 1, 2, 3, 5, 6, 8, 10, 12, 15, 16, 17, 18, 19, 21, 22, 23, 24, 31, 34, 38, 40, 41, 42, 43, 44, 45, 48, 49, 51, 52, 53, 54, and 65, as well as the documents described in Section D of the Bradbury Declaration (which is redacted in its entirety), for the Court to determine that those documents fall within one or more of the seven categories of information identified in the Negroponte Declaration, and are properly withheld pursuant to Exemption 1. *See ACLU v. United States Dep't of Justice,* 265 F.Supp.2d at 27.

The Court also concludes that the Baker Declaration, including the redacted portions which the Court reviewed *in camera* on May 24, 2007, and the Negroponte and Bradbury Declarations (see Negroponte Declaration ¶¶ 22–35; Bradbury Declaration ¶¶ 28–29), adequately describe the Classified Documents identified by Defendants as ODAG 9, 28, 29, 30, and 32, for the Court to determine that those documents fall within one or more of the seven categories of information identified in the Negroponte Declaration, and are properly withheld pursuant to Exemption 1. *See ACLU v. United States Dep't of Justice,* 265 F.Supp.2d at 27.

Having reviewed the Hardy Declaration, including several redacted sections reviewed *in camera* on May 24, 2007, the Court concludes that the Hardy Declaration adequately describes the Classified Documents identified as ODAG 46 and 47, for the Court to determine that those documents fall within one or more of the seven categories of information identified in the Negroponte Declaration, and are

which is claimed to be exempt pursuant to Exemption 5 only and is addressed at section

(3)(a)(iv). (*See* Second Baker Declaration ¶¶ 56–58.)

properly withheld pursuant to Exemption 1. *See ACLU v. United States Dep't of Justice*, 265 F.Supp.2d at 27.

Having reviewed the Giles Declaration and the Lynne R. Declaration, the Court concludes that the information provided about the Classified Documents withheld by the NSA is somewhat less specific than the descriptions of the Classified Documents in Defendants' other declarations. At the same time, the Court recognizes that "concerning the NSA signals intelligence mission, a court cannot demand as complete a public record as in many other contexts, even other intelligence contexts, without imperiling legitimate secrecy interests." *Hayden v. NSA*, 608 F.2d 1381, 1385 (D.C.Cir.1979). Affording the NSA position "substantial weight" with respect to matters of national security, *Halpern*, 181 F.3d at 292, and considering the Giles and Lynne R. Declarations together with the Negroponte Declaration, the Court concludes that the declarations adequately describe the Classified Documents withheld by the NSA for the Court to determine that those documents fall within one or more of the seven categories of information identified in the Negroponte Declaration, and are properly withheld pursuant to Exemption 1. *See People for the Am. Way Found. v. NSA*, 462 F.Supp.2d 21, 33 (D.D.C.2006) ("[b]ecause of the deference due to the NSA in matters of national security, and in the absence of any evidence to the contrary, the Court must accept defendant's reasonable explanation that the materials were classified in order to prevent damage to the national security").

### (2) Classified Documents Withheld Under Exemption 3

With the exception of ODAG 46 and 47 (*see also* section (1)(b), above), Defendants argue that all of the Classified Documents withheld under Exemption 1 are also "properly withheld by [D]efendants pursuant to Exemption 3 of FOIA," (Def. Mem. at 14), which protects documents "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). Defendants argue that the Classified Documents are withheld under Exemption 3 pursuant to three statutes: Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 403–1(i)(1), which requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure"; 18 U.S.C. § 798, which prohibits disclosure of, among other things, information "concerning the intelligence activities of the United States"; and Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 402 note ("Section 6"), which states "nothing in this Act or any other law ... shall be construed to require the disclosure of the organization or any function of the National Security Agency [or] of any information with respect to the activities thereof." (Def. Mem. at 15–16.) Plaintiff argues that "whatever the breadth of the statute," Defendants must "provide a relatively detailed analysis of the withheld material" and "show how the analysis applies to individual documents." (Pl. Mem. at 18.)

"The two threshold criteria needed to obtain [E]xemption 3 exclusion from public disclosure are that (1) the statute invoked qualifies as an [E]xemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope." *A. Michael's Piano v. Federal Trade Comm'n*, 18 F.3d 138, 143 (2d Cir.1994). Each of the three statutes cited by Defendants "qualif[ies] under FOIA Exemption 3" as a withholding statute. *People for the Am. Way Found.*, 462 F.Supp.2d at 28.

The Court concludes that the Classified Documents withheld by the

NSA, as described in the Giles and Lynne R. Declarations, are within the scope of Section 6 because they concern "signals intelligence operations" (Lynne R. Declaration ¶ 1), which is "one of the [NSA's] primary functions." *Hayden v. NSA,* 608 F.2d at 1389; *see* 50 U.S.C. § 402 note. As a result, those documents are properly withheld under Exemption 3. *See Linder v. NSA,* 94 F.3d 693, 698 (D.C.Cir.1996) ("[t]he protection afforded by [S]ection 6 is, by its very terms, absolute. If a document is covered by [S]ection 6, NSA is entitled to withhold it").

■■■ The Court also concludes that the Classified Documents identified in the Baker Declaration, i.e., ODAG 9, 28, 29, 30, and 32, which concern "dealings with the Foreign Intelligence Surveillance Court" (Baker Declaration ¶ 15), are within the scope of Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act because they contain "intelligence sources and methods," and as such have been classified properly by the Director of National Intelligence. (*See* Negroponte Declaration ¶ 3); *see A. Michael's Piano, Inc.,* 18 F.3d at 143. And, each of the Classified Documents contains information "concerning the intelligence activities of the United States" and so is prohibited from disclosure by 18 U.S.C. § 798. (*See, e.g.,* Baker Declaration ¶ 17); *see id.*

Most of the Classified Documents identified in the Bradbury Declaration and Second Bradbury Declaration also fall within the scope of Section 102A(i)(1) of the Intelligence Reform and Terrorism Prevention Act and 18 U.S.C. § 798; as stated at section (1)(b) above, those documents were

properly classified by the Director of National Intelligence as containing one or more of seven categories of information disclosure of which would reveal "intelligence sources and methods," 50 U.S.C. § 403–1(i)(1), and "the intelligence activities of the United States," 18 U.S.C. § 798. At the same time, the Court does not find sufficient information in the Bradbury Declaration to conclude that ODAG 1, 2, 5, 6, 38, 42, and 52 fall within these statutes, and so does not conclude that ODAG 1, 2, 5, 6, 38, 42, and 52 are exempt pursuant to Exemption 3. (*See* Bradbury Declaration ¶¶ 70–73.)

### (3) Documents Withheld Under Exemption 5

Defendants claim that all of the Unclassified Documents are properly withheld under Exemption 5 (Def. Mem. at 19) which protects "agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work product, executive privilege)."[8] *Grand Cent. P'ship, Inc. v. Cuomo,* 166 F.3d 473, 481 (2d Cir.1999) ("[t]he deliberative process privilege ... is encompassed within the executive privilege"). Plaintiff argues that "the Defendants have failed to carry their burden for withholding the unclassified materials," which "are improperly held under Exemption Five and should be released to the Times." (Pl. Mem. at 24, 26.)

### (a) Deliberative Process Privilege

Defendants argue that "the withheld unclassified documents all fall squarely

---

**8.** The Court need not and does not address Defendants' claims under Exemption 5 for the Classified Documents which the Court found were properly withheld under Exemptions 1 and/or 3. *People for the Am. Way Found.,* 462 F.Supp.2d at 28 n. 3. For the same reason, the Court also declines to determine Defen-

dants' claim, stated in the Hardy Declaration, that ODAG 46 and 47 are exempt pursuant to 5 U.S.C. § 552(b)(2) ("Exemption 2"), or Defendants' claim, stated in the Baker Declaration, that ODAG 9, 28, 29, 30, and/or 32 are exempt pursuant to Exemption 6. *Id.*

within the deliberative process privilege" because they were "prepared to assist decision-makers in making decisions or communicating those decisions to the public and the press." (Def. Mem. at 20, 22.) Plaintiff counters that the Unclassified Documents include "comments on materials that were released to the public as part of the administration's efforts to win public support for the TSP," and "[a]s such, they are merely peripheral to policy formulation." (Pl. Mem. at 24–25.)

■■■ The deliberative process privilege protects documents that are " 'predecisional,' i.e., prepared in order to assist an agency decisionmaker in arriving at his decision," *Nat'l Council of La Raza v. Dep't of Justice,* 411 F.3d 350, 356 (2d Cir.2005), "rather than to support a decision already made." *Petroleum Info. Corp.,* 976 F.2d at 1434; *see Judicial Watch, Inc. v. United States Postal Serv.,* 297 F.Supp.2d 252, 260 (D.D.C.2004) ("[t]he most basic requirement of the privilege is that a document be antecedent to the adoption of an agency policy. A postdecisional document, draft or no, by definition cannot be 'predecisional' ").

■■■ Documents protected under the deliberative process privilege must also be "actually related to the process by which policies are formulated." *Nat'l Council of La Raza,* 411 F.3d at 356. The privilege "does not operate indiscriminately to shield all decision-making by public officials" such as "routine operating decision[s]." *Schiller v. City of New York,* No. 04 Civ. 7922, 2007 WL 136149, at *12, 2007 U.S. Dist. LEXIS 4285, at *33 (S.D.N.Y. Jan. 19, 2007). To determine whether a document is deliberative, "[c]ourts have looked to factors such as whether the document 'formed an essential link in a specified consultative process,' 'reflects the personal opinions of the writer rather than the policy of the agency,' and 'if released,

would inaccurately reflect or prematurely disclose the views of the agency.' " *Grand Cent. P'ship, Inc.,* 166 F.3d at 482.

The Unclassified Documents are described in the Bradbury, Pustay, Baker, and Kovakas Declarations as (i) "talking points and the formulation of responses to possible questions"; (ii) "draft documents," such as a "draft [newspaper] editorial addressing the legal basis for the TSP" and "drafts of the [DOJ's] January 19, 2006 paper entitled 'Legal Authorities Supporting the Activities of the National Security Agency Described by the President' " (the "White Paper"); and (iii) "e-mail discussions about the content of drafts" and "attorney notes." (Bradbury Declaration ¶ 26; Pustay Declaration ¶ 9.) In considering the Unclassified Documents, it is relevant to note that the existence of the TSP became public on December 16, 2005 (*see* Pl. Mem. at 3), and that each of the Unclassified Documents withheld is dated December 17, 2005 or later. (*See* Bradbury *Vaughn* Index; Pustay *Vaughn* Index; Kovakas Declaration ¶ 4.)

### (i) *Talking Points*

With respect to the "talking points and the formulation of responses to possible questions," these documents were prepared "to aid in briefing officials and preparing them to answer questions," and "for the Attorney General so that he can be prepared to answer inquiries from the press." (Pustay Declaration ¶ 16.) Defendants do not adequately describe how these documents are "contemplative, deliberative, analytical documents, weighing the pros and cons of a given course of action." *Associated Press v. United States Dep't of Defense,* No. 05 Civ. 5468, 2006 WL 2707395, at *8, 2006 U.S. Dist. LEXIS 67913, at *8 (S.D.N.Y. Sept. 20, 2006). These documents were created after the implementation of the TSP and appear to

relate to "routine operating decision[s] rather than a policy oriented judgment to which the privilege would apply." *Schiller*, 2007 WL 136149, at *10, 2007 U.S. Dist. LEXIS 4285, at *34; *see also Mac-Namara v. City of New York*, No. 04 Civ. 9216, 2007 WL 1169204, at *5, 2007 U.S. Dist. LEXIS 28956, at *13 (S.D.N.Y. Apr. 20, 2007) ("[w]hether or not the Mayor should use suggested 'talking points' is not the sort of public policy decision that falls within the scope of the privilege").

### (ii) *Draft Documents*

■ With respect to the Unclassified Documents withheld as drafts, "[t]he mere fact that a document is a draft . . . is not a sufficient reason to automatically exempt it from disclosure." *Lee v. FDIC*, 923 F.Supp. 451, 458 (S.D.N.Y.1996). Defendants' descriptions do not include specific information about the draft documents such as their "function and significance in the agency's decisionmaking process." *The Wilderness Soc'y v. United States Dep't of the Interior*, 344 F.Supp.2d 1, 15 (D.D.C.2004). Based upon the information provided by Defendants, the Court cannot determine that the drafts "formed an essential link in a specified consultative process" or "if released, would inaccurately reflect or prematurely disclose the views of the agency." *Grand Cent. P'ship, Inc.*, 166 F.3d at 482.

### (iii) *E-mails and Notes*

■ With respect to documents described as e-mail discussions and notes, "[i]f the documents themselves merely restate facts and do not involve legal or policy matters, any comments or opinions about these same documents are not privileged." *Judicial Watch, Inc. v. United States Postal Serv.*, 297 F.Supp.2d at 263. The privilege also does not apply to e-mails or notes that contain "[p]urely factu-al material not reflecting the agency's deliberative process." *Grand Cent. P'ship, Inc.*, 166 F.3d at 482; *see also Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 414 (S.D.N.Y.2004) ("comments from an agency employee that constitute 'give and take' with respect to the content of documents are not privileged" unless "the give-and-take [ ] regard[s] opinions on legal or policy matters").

Defendants do not provide (adequately) specific descriptions of the "e-mail discussions" and "attorney notes" reflected in the Bradbury, Baker, and Pustay Declarations, and the *Vaughn* indexes are vague and, among other things, do not include the documents' authors which "makes it more difficult for the defendants to satisfy their burden of providing sufficient detail to describe how the particular documents were part of the deliberative process." *The Wilderness Soc'y*, 344 F.Supp.2d at 15. As a result, "the Court cannot determine from the evidence before it whether the deliberative process privilege properly applies." *Nat'l Council of La Raza v. United States Dep't of Justice*, 337 F.Supp.2d 524, 535 (S.D.N.Y.2004).

■ By contrast, the Kovakas Declaration offers a detailed description of the date, author, contents, purpose, and recipients of one withheld e-mail ("Kovakas Document"). (*See* Kovakas Declaration ¶ 4 ("[t]he e-mail consists of four sentences in which Mr. Nichols comments on a draft of the white paper" and "raises a possible issue to be considered before the white paper is finalized").) The Court concludes that the Kovakas Document "formed an essential link in a specified consultative process," and as such was properly withheld under the deliberative process privilege. *Grand Cent. P'ship, Inc.*, 166 F.3d at 482.

(iv) *ODAG 50*

■ In addition to the Unclassified Documents, the Second Bradbury Declaration addresses one Classified Document, identified as ODAG 50 and described as "a final memorandum [dated September 25, 2001] containing the legal opinion of OLC ... produced in response to a request for OLC analysis from other department officials," which Defendants claim is exempt pursuant (only) to Exemption 5. (Second Bradbury Declaration ¶¶ 56–57.) The Second Bradbury Declaration states persuasively that ODAG 50 "reflects OLC's advice which is considered as part of the decision-making process of those officials that ask for it" (Second Bradbury Declaration ¶ 57), and describes the "function and significance" of ODAG 50 "in the agency's decisionmaking process." The Court finds that ODAG 50 is properly withheld pursuant to the deliberative process privilege. *The Wilderness Soc'y*, 344 F.Supp.2d at 15.

(b) *Presidential Communications Privilege*

■ Defendants argue that two of the Unclassified Documents, described as "Group Number 5" in the Pustay *Vaughn* Index, are properly withheld pursuant to the presidential communications privilege because they are communications which "originated with a presidential advisor and solicited advice regarding a presidential decision." (Def. Mem. at 24.) Plaintiff does not address the presidential communications privilege specifically but responds generally that "Defendants have failed to carry their burden for withholding the unclassified materials under Exemption Five." (Pl. Mem. at 24.)

■ The presidential communications privilege "applies to communications made in the process of arriving at presidential decisions." *In re Sealed Case*, 121 F.3d 729, 745 (D.C.Cir.1997). The privilege "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones." *Id.* at 746. The privilege protects "direct communications with the President, ... discussions between his senior advisers," *Assoc. of Am., Physicians & Surgeons v. Clinton*, 997 F.2d 898, 909 (D.C.Cir.1993), and "documents 'solicited and received' by the President or his immediate White House advisers." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C.Cir.2004). The government bears the burden "of proving that [advisers'] communications occurred in the course of advising the President." *Id.* at 1120–21.

The two documents at issue are described as "an e-mail from an attorney in the White House Counsel's Office seeking the Attorney General's comments on, and forwarding a draft of, the President's December radio address." (Pustay Declaration ¶ 25.) Having reviewed the Pustay Declaration, the Court finds that because these two documents "originated with a presidential adviser and solicited advice regarding a presidential decision" (Pustay Declaration ¶ 26), they are properly withheld, i.e., they are not subject to disclosure, under FOIA. *See Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d at 1114.

(c) *Attorney Work Product*

Defendants argue that "many of the documents were also withheld under the attorney work product doctrine" because they were "drafted in contemplation of anticipated litigation challenging the legality of the TSP." (Def. Mem. at 22–23.) Plaintiff argues that the attorney work product privilege does not apply because "[n]one of these materials involves ... litigation or [a] legal transaction." (Pl. Mem. at 24.)

"The attorney work product privilege protects the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways prepared in anticipation of litigation." *A. Michael's Piano, Inc.*, 18 F.3d at 146. "The privilege is limited in scope" and does not protect "every written document generated by an attorney." *Judicial Watch, Inc. v. United States Postal Serv.*, 297 F.Supp.2d at 268. "[D]ocuments that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation" are not protected as attorney work product. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998).

Based upon Defendants' descriptions, several of the Unclassified Documents, such as the "draft editorial," the "talking points," and the related notes and comments, seem to have been drafted for public relations purposes. (*See, e.g.*, Pustay Declaration ¶ 16.) "Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation." *United States v. Adlman*, 134 F.3d at 1202; *see also Bank of Am. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y.2002) ("the protection is unavailable when the disclosure is not made in the pursuit of such trial preparation or when the disclosure is made in a manner that is inconsistent with maintaining secrecy against opponents"). The Court can not find at this time that the Unclassified Documents (with two exceptions, noted below as Group Number 3) are exempt as attorney work product. *See United States v. Adlman*, 134 F.3d at 1202.

Plaintiff concedes that two documents listed as Group Number 3 in the Pustay *Vaughn* Index, described as documents from the United States Attorney's Office "pertaining to foreign communications acquisition and watch listing" and "provid[ing] guidance for responding to motions made in criminal litigation" (Pustay *Vaughn* Index at 2), are properly withheld as attorney work product. (*See* Pl. Mem. at 25 n. 9.) The Court agrees and finds that Defendants need not disclose these two documents. *See A. Michael's Piano, Inc.*, 18 F.3d at 146.

### (4) Adequacy of DOD Search for Documents

Defendants argue that "in light of the high level of classification of responsive documents," the search conducted by DOD following Plaintiff's FOIA request "was reasonably formulated to identify responsive records, and was adequate under FOIA." (Def. Mem. at 6.) Plaintiff argues that the Kammer Declaration submitted by Defendants, which describes the DOD search, "says nothing about what files were searched, the scope of the search within the selected office, the method of the search, or the general structure of the DOD's filing system" and "is insufficient to establish the requisite adequacy of the search." (Pl. Mem. at 11, 13.)

"In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate," by submitting "[a]ffidavits or declarations supplying facts indicating that the agency has conducted a thorough search." *Carney*, 19 F.3d at 812. "If . . . the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Campbell*, 164 F.3d at 26.

The Kammer Declaration states that "OFOI determined that [Plaintiff's] request should be tasked to ... the Office of the Under Secretary for Defense Intelligence (USD(I))" which "oversees and provides policy, program and budgetary guidance for the defense agencies, to include the National Security Agency," and that "USD(I) conducted a search of those files where records were most likely to be found and located two documents responsive to plaintiff's request," both of which were referred to other agencies for processing. (Kammer Declaration at 2.) It "contains no specificity of detail nor any description of methods employed in the search for responsive records." *O'Keefe v. United States Dep't of Defense*, 463 F.Supp.2d 317, 328 (E.D.N.Y.2006). For instance, "[t]here is no explanation of what records were searched, or what search terms or methods were employed." *Dinsio v. FBI*, 445 F.Supp.2d 305, 312 (W.D.N.Y.2006); *see also Maynard v. CIA*, 986 F.2d 547, 559 (1st Cir.1993) ("[a] satisfactory agency affidavit should, at a minimum, describe in reasonable detail the scope and method by which the search was conducted").

The Kammer Declaration does not "enable the District Court to satisfy itself that all appropriate files have been searched." *Jones–Edwards*, 352 F.Supp.2d at 423. At the same time, "[s]uch a failure does not establish an absence of good faith," *Sussman v. United States Dep't of Justice*, No. 03 Civ. 3618, 2006 WL 2850608, at *13, 2006 U.S. Dist. LEXIS 75867, at *37 (E.D.N.Y. Sept. 30, 2006), and Plaintiff has not offered evidence to suggest that the DOD search was not conducted in good faith. *See Carney*, 19 F.3d at 812 ("[i]n order to justify discovery ... the plaintiff must make a showing of bad faith on the part of the agency"). The appropriate next step is for Defendants "to submit to the Court a reasonably detailed affidavit

[or affidavits]" which "indicate the rigors of their search," following review of which the Court will determine whether the search was "adequate" under FOIA. *Sussman*, 2006 WL 2850608, at *13, 2006 U.S. Dist. LEXIS 75867, at *36–37; *see Halpern*, 181 F.3d at 295 ("the district court will have a number of options for eliciting further detail from the government," including "requir[ing] supplemental ... affidavits").

### (5) Further Submissions

■ Because Defendants' declarations did not provide "an adequate foundation to review the soundness of the withholding" of most of the Unclassified Documents, *Campbell*, 164 F.3d at 31, and for the reasons stated in section (3) above, Defendants are directed to submit the Unclassified Documents, with the exception of the documents listed as Group Number 3 and 5 of the Pustay *Vaughn* Index and the Kovakas Document, to the Court for *in camera* review on or before July 16, 2007. *See ACLU v. Dep't of Defense*, 389 F.Supp.2d at 567 ("when a court is not able to resolve to its own satisfaction an agency's determination to withhold documents, ... it may conduct an in camera review"). Following such review, the Court will determine whether the documents fall within one or more of the privilege categories encompassed by Exemption 5, *see Grand Cent. P'ship, Inc.*, 166 F.3d at 481, or if they should be released to Plaintiff.

The Court also directs Defendants, for the reasons stated in section (4) above, to submit additional affidavits or declarations which provide "reasonable detail" regarding the search conducted by DOD on or before July 16, 2007. *Maynard*, 986 F.2d at 559. Following such review, the Court will consider again the issue of the adequacy of the DOD search. *See Carney*, 19 F.3d at 812 ("[a]ffidavits or declarations

supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations ... are sufficient to sustain the agency's burden").

## V. Conclusion and Order

For the reasons stated herein, Defendants' motion for summary judgment is granted, and Plaintiff's cross-motion is denied, with respect to all Classified Documents. Following a review of Defendants' additional submissions, the Court will determine whether summary judgment is appropriate with respect to the Unclassified Documents and the adequacy of the DOD search.

### *Exhibit A*

**Legend**

| | |
|---|---|
| DP: Deliberative process privilege | PC: Presidential communications privilege |
| AC: Attorney client privilege | WP: Attorney work product privilege |

| Document(s) at issue | Declaration | FOIA exemption(s) claimed | Adjudication |
|---|---|---|---|
| ODAG 10, 17, 18, 19 | Bradbury ¶¶ 41–47; 57–61 | 1, 3, 5 (DP, PC, AC) | Properly withheld under Exemptions 1 & 3 |
| ODAG 48, 65 | Bradbury ¶¶ 41–47 | 1, 3, 5 (DP, PC, AC) | Properly withheld under Exemptions 1 & 3 |
| ODAG 3 | Bradbury ¶¶ 48, 49; Second Bradbury ¶¶ 12–14 | 1, 3, 5 (DP, AC) | Properly withheld under Exemptions 1 & 3 |
| ODAG 40 | Bradbury ¶¶ 48, 49; Second Bradbury ¶¶ 34–37 | 1, 3, 5 (DP, AC) | Properly withheld under Exemptions 1 & 3 |
| ODAG 12 | Bradbury ¶¶ 50–55 | 1, 3 | Properly withheld under Exemptions 1 & 3 |
| ODAG 23, 24 | Bradbury ¶¶ 56–61 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 15, 16 | Bradbury ¶¶ 57–61 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| Redacted | Bradbury ¶¶ 62–67 | Redacted | Properly withheld under Exemptions 1 & 3 |
| ODAG 1, 2, 5, 6, 38, 42, 52 | Bradbury ¶¶ 70–73 | 1, 5 (DP, PC, AC) | Properly withheld under Exemption 1 |
| ODAG 8 | Bradbury ¶¶ 74–76; Second Bradbury ¶¶ 15–17 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 43 | Bradbury ¶¶ 74–76; Second Bradbury ¶¶ 42–44 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 44 | Bradbury ¶¶ 74–76; Second Bradbury ¶¶ 45–48 | 1, 3, 5 (DP, PC) | Properly withheld under Exemptions 1 & 3 |
| ODAG 45 | Bradbury ¶¶ 74–76; | 1, 3, 5 | Properly withheld |

| | | | |
|---|---|---|---|
| | Second Bradbury ¶¶ 49–52 | (DP) | under Exemptions 1 & 3 |
| ODAG 49 | Bradbury ¶¶ 74–76; Second Bradbury ¶¶ 53–55 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 50 | Bradbury ¶¶ 74–76; Second Bradbury ¶¶ 56–58 | 5 (DP) | Properly withheld under Exemption 5 |
| ODAG 51 | Bradbury ¶¶ 74–76; Second Bradbury ¶¶ 59–62 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 53 | Bradbury ¶¶ 74–76; Second Bradbury ¶¶ 63–67 | 1, 3, 5 (DP, AC) | Properly withheld under Exemptions 1 & 3 |
| ODAG 21 | Bradbury ¶¶ 77–78; Second Bradbury ¶¶ 18, 21–28 | 1, 3, 5 (DP, AC, WP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 22 | Bradbury ¶¶ 77–78; Second Bradbury ¶¶ 19, 21–28 | 1, 3, 5 (DP, AC, WP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 31 | Bradbury ¶¶ 79–81; Second Bradbury ¶¶ 20–28 | 1, 3, 5 (DP, AC, WP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 34 | Bradbury ¶¶ 79–81; Second Bradbury ¶¶ 29–33 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 41 | Bradbury ¶¶ 79–81; Second Bradbury ¶¶ 38–41 | 1, 3, 5 (DP, AC) | Properly withheld under Exemptions 1 & 3 |
| ODAG 54 | Bradbury ¶¶ 79–81; Second Bradbury ¶¶ 68–70 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 28, 30 | Baker ¶¶ 19–21 | 1, 3, 5 (DP) | Properly withheld under Exemptions 1 & 3 |
| ODAG 29, 32 | Baker ¶¶ 22–23 | 1, 3 | Properly withheld under Exemptions 1 & 3 |
| ODAG 9 | Baker ¶¶ 24–25 | 1, 3 | Properly withheld under Exemptions 1 & 3 |
| ODAG 46, 47 | Hardy ¶¶ 11–24 | 1, 2, 5 (DP) | Properly withheld under Exemption 1 |
| Not identified | Giles ¶¶ 9–21; Lynne R. ¶¶ 18–31 | 1, 3, 5 (DP, AC, WP) | Properly withheld under Exemptions 1 & 3 |
| Bradbury Index, Group Number 1–24, 27 | Bradbury ¶¶ 25–36 | 5 (DP, WP) | Insufficient descriptions; Defendants to produce for in camera review |
| Bradbury Index, Group Number 25–26, 28–29 | Bradbury ¶¶ 25–33 | 5 (DP) | Insufficient descriptions; Defendants to produce for in |

| | | | camera review |
|---|---|---|---|
| Pustay Index, Group Number 1, 2, 4, 7–8 | Pustay ¶¶ 7–20 | 5 (DP) | Insufficient descriptions; Defendants to produce for in camera review |
| Pustay Index, Group Number 3 | Pustay ¶¶ 7–24 | 5 (DP, WP) | Properly withheld under attorney work product privilege (acknowledged by Plaintiff) |
| Pustay Index, Group Number 5 | Pustay ¶¶ 7–20, 25–26 | 5 (DP, PC) | Properly withheld under presidential communications privilege |
| Pustay Index, Group Number 6 | Pustay ¶¶ 7–24 | 5 (DP, WP) | Insufficient descriptions; Defendants to produce for in camera review |
| One document, described as a "one-page e-mail" | Baker ¶¶ 26–32 | 5 (DP, WP) | Insufficient description; Defendants to produce for in camera review |
| One document, described as an "electronic communication dated January 13, 2006" | Kovakas ¶¶ 4–6 | 5 (DP, WP) | Properly withheld under deliberative process privilege |